|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(a)**<br><br>**CULLEN AND DYKMAN LLP**<br>433 Hackensack Avenue<br>Hackensack, NJ 07601<br>(201) 488-1300 (Tel)<br>(201) 488-6541 (Fax)<br>David Edelberg, Esq.<br>dedelberg@cullenanddykman.com<br>*Proposed Counsel to Macbeth Designs LLC* |  |
| In Re:<br><br>Macbeth Designs LLC<br><br>Debtor. | Chapter 11<br><br>Case No.: 16-30967<br><br>Judge: |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS, (3) SCHEDULING A FINAL HEARING ON THE USE OF CASH COLLATERAL AND (4) GRANTING RELATED RELIEF**

TO:   THE HONORABLE JUDGE OF THE UNITED STATES BANKRUPTCY COURT:

Macbeth Designs LLC (the "Debtor") respectfully submits this motion (the "Motion"), pursuant to sections 361 and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-3 of the Local Rules of the United States Bankruptcy Court, District of New Jersey (the "Local Bankruptcy Rules"), for entry of an interim order, substantially in the form submitted herewith, (i) authorizing the use of cash collateral (the "Cash Collateral") in which Jan Josephs ("Josephs") and JPMorgan Chase Bank, N.A. ("Chase" and, together with Josephs, the "Secured Lenders") have an interest in accordance with the ninety (90) day budget (the "Budget") annexed hereto as Exhibit "A" in order to avoid immediate and

irreparable harm to the Debtor's estate, (ii) granting the Secured Lenders the adequate protection set forth herein to secure any diminution in the value of the Secured Lenders' collateral, and (iii) scheduling a final hearing on the Motion.

## PRELIMINARY STATEMENT

The Debtor requires the immediate use of Cash Collateral to pay its usual and ordinary operating expenses for design and related operating costs and maintain the value of its business while the Debtor reorganizes its business operations.  Absent the use of the Cash Collateral to pay the expenses set forth in the ninety (90) day Budget annexed as Exhibit A, which provides a ninety (90) day forecast in order coincide with the Debtor's business cycle in which payments are received quarterly, the Debtor will be unable to operate and the value of the Debtor's assets will be eradicated.  The payment of design-related expenses including payroll, insurance and costs for samples as set forth more fully in the Budget will therefore benefit the holders of liens on the Debtor's assets in particular, and the Debtor's other creditors in general, by preserving the value of the Debtor's estate.   In further support of this motion, the Debtor states as follows:

## BACKGROUND

1. On November 1, 2016 (the Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and continues to operate and manage its business as a debtor-in-possession.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334 and the standing order of reference entered by the United States District Court for the District of New Jersey dated July 23, 1984.

4. Venue of the Debtor's chapter 11 case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding under 28 U.S.C. §157(b)(2). The statutory predicates for the relief requested herein are sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014 and Local Bankruptcy Rule 4001-3.

### A. Background of the Debtor and the Debtor's Business Operations

5. In support of this Motion, the Debtor relies upon and incorporates by reference the affidavit of Margaret Josephs (the "Josephs Affidavit"), the Debtor's president, filed in support of the Debtor's voluntary petition. A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the Josephs Affidavit.

6. The Debtor is a limited liability company incorporated in the State of New Jersey which licenses designs as a part of the Macbeth Collection brand. Macbeth Collection is a global lifestyle brand known for its "on trend" bright colors and preppy bohemian prints with a presence in over 6,000 department and specialty stores ranging from big box retailers like Wal-Mart to high end department stores like Saks Fifth Avenue.

7. Together with other related entities in which Margaret Josephs holds an ownership interest, the Debtor is engaged in the business of creating, designing and marketing products which contain various designs that have been developed and maintained since the inception of the Macbeth Collection brand in 2001. Currently, the Debtor licenses its trademarks and designs in connection with, among other things, home accessories, various storage products, consumer electronics, personal care products and clothing.

8. One hundred (100%) percent of the Debtor's revenue stream is derived from quarterly fees received under the license agreements, many of which are set to expire in the 2016

3

or 2017 calendar years. The Debtor's cash flow is cyclical in nature given that its sole source of revenue is generated on a quarterly basis. In addition, the design and licensing process is time and labor intensive. From the inception of the creative process, it may take up to ten (10) months before any revenue other than a nominal start-up fee is received given the time associated with the design, license, manufacture and sale of the licensed product.

9. Given the nature of its business cycle and as a result of a series of legal disputes, the Debtor began to experience severe liquidity constraints over the past two years because it does not generate enough revenue to fund operations and bear the costs associated with defending lawsuits and funding settlement costs.

10. Compounding this situation, in December 2015 an arbitration award was entered in favor of iWorld LLC ("iWorld") arising out of an alleged breach of a licensing agreement entered into by and between Macbeth and iWorld, which licensing agreement the Debtor believes to be void and unenforceable. In January 2016 iWorld filed a petition to confirm the arbitration award. On July 21, 2016, judgment was entered confirming the arbitration award in the amount of $497,880.14, plus interest accruing at nine (9%) percent. The Debtor filed a notice of appeal on August 1, 2016 and believes that it has grounds to overturn the subject award.

11. Thereafter, iWorld issued restraining notices on the Debtor's bank accounts for over one million ($1,000,000) dollars and to the Debtor's licensees, thus forcing the instant chapter 11 filing.

    B.    **<u>Secured Claims Against the Debtor</u>**

12. The Debtor is obligated to Chase under a business line of credit (the "Chase LOC") of which approximately $81,072.83 remains outstanding as of the Petition Date. The Chase LOC is secured by an alleged perfected security interest in all of the Debtor's assets.

4

13. In addition, because of the Debtor's severe cash flow issues discussed above and in the Josephs Affidavit, it was necessary for the Debtor to obtain a loan from Josephs, who is the ex-husband of the Debtor's managing member, Margaret Josephs. The Debtor is obligated to Josephs under the terms of a promissory note dated May 25, 2016 in the original principal amount of $250,000 (the "Josephs Note") of which approximately $231,556 remains outstanding as of the Petition Date. The Josephs Note is secured by an alleged perfected security interest in the Debtor's assets, including its cash, accounts, accounts receivable, royalties, and contract rights, which is subordinate to Chase. The Josephs Note is also personally guaranteed by Margaret Josephs.

14. Immediately upon commencement of this chapter 11 case, the Debtor intends to initiate discussions with the Secured Lenders regarding the consensual use of Cash Collateral. The Debtor is hopeful that the parties will be able to negotiate a consensual stipulation which provides for the use of Cash Collateral in accordance with the Budget.

## RELIEF REQUESTED

15. By this Motion, the Debtor seeks entry of interim and final orders authorizing the Debtor to use the Cash Collateral in accordance with the Budget to avoid immediate and irreparable harm to the Debtor's estate and providing the Secured Lenders with the adequate protection described herein.

    **A.**    **The Debtor's Request to Use the Secured Lenders' Cash Collateral Should be Approved**

16. The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code, which provides in relevant part as follows:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary

5

course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

17. Section 363(c)(2) of the Bankruptcy Code permits a debtor-in-possession to use cash collateral with the consent of the secured party or if authorized by the Court after notice and a hearing. 11 U.S.C. § 363(c)(2). It remains the Debtor's desire to obtain the consent of the Secured Lenders to the use of Cash Collateral prior to the preliminary hearing. However, pending a consensual arrangement, the Debtor seeks Court approval to use the Cash Collateral in accordance with the ninety (90) day Budget annexed hereto as <u>Exhibit A</u>.

18. The Debtor requires the immediate use of the Cash Collateral in order to avoid immediate and irreparable harm to its business. The Debtor is responsible for funding the payroll costs of the design, marketing and other personnel who provide essential services to the Debtor through a non-debtor related entity, as well as for paying related costs for insurances, samples, travel, rent and other costs that are critical to the continued operation of the business. Absent the emergency use of the Cash Collateral to pay the usual and ordinary operating expenses of the business, the value of the Debtor's business will be irreparably harmed because the Debtor will be unable to pay its design costs and maintain insurances, which will result in additional negative impacts on the Debtor's business and ability to reorganize. The immediate use of the Cash Collateral is therefore necessary to preserve the value of property of the Debtor's bankruptcy estate.

19. The Debtor therefore requests the immediate authority to utilize the Cash Collateral in the approximate amount of $163,812.70 over a ninety (90) day period to pay the ordinary business expenses incurred during the Debtor's quarterly business cycle in accordance

with the Budget through the date of the final hearing to fund the operation of its business to the extent necessary to avoid immediate and irreparable harm to the Debtor's business.

20. Approval of the use of the Cash Collateral on the terms identified in this Motion is in the best interests of the Debtor, the Debtor's estate and its creditors. The use of the Cash Collateral will enable the Debtor to operate, pay post-petition obligations including design costs, insurance costs and related expenses in order to preserve the value of its business. Absent the use of the Cash Collateral, the Debtor would be required to cease operations and would lose the opportunity to successfully reorganize its business.

**B.      The Proposed Adequate Protection Will Adequately Protect the Secured Lenders' Interests in the Cash Collateral**

21. Section 363(e) of the Bankruptcy Code provides that a party with an interest in property proposed to be used, sold or leased by the debtor may receive adequate protection of such interest before a debtor may use, sell or lease such property. 11 U.S.C. § 363(e).

22. Section 361 of the Bankruptcy Code provides three non-exclusive means of providing adequate protection. These alternatives include requiring the debtor to make a cash payment or periodic cash payments to the extent of the decrease of value on the property. 11 U.S.C. § 361(1). Alternatively, a debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. 11 U.S.C. § 361(2). Lastly, adequate protection may be provided by granting other relief that will result in the indubitable equivalent of the interest in property. 11 U.S.C. § 361(3).

23. What constitutes adequate protection varies with the facts and circumstances of each particular case. *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992). Bankruptcy courts are vested with discretion to determine the form of protection that best reflects the spirit and intent of section 361 of the Bankruptcy Code. *See In re*

7

*Bramham*, 38 B.R. 459, 466 (Bankr. D. Nev. 1984); *In re Lackow Brothers, Inc.*, 10 B.R. 717, 720 (Bankr. S.D. Fla. 1981); *In re Family Investments, Inc.*, 8 B.R. 572 (Bankr. W.D. Ky. 1981). Regardless of its form, the entitlement to and measure of the protection required is always determined by the extent of the anticipated or actual decrease, if any, in the value of the secured creditor's collateral during course of the bankruptcy case. *See In re First South Savings Assoc.*, 820 F.2d 700, 710 (5th Cir.1987).

24. Adequate protection requires only that the value of the creditor's interest in the cash collateral be protected from diminution while the Debtor uses the cash collateral. *United Savings Association of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988). Said another way, it is "intended by the Bankruptcy Code only to assure that a secured creditor, during the pendency of a bankruptcy case, does not suffer a loss in the value of its interest in property of the bankruptcy estate." *In re Markos Gurnee Partnership*, 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997).

25. The Debtor proposes to provide the Secured Lenders with two forms of adequate protection to the extent of any diminution in value of their respective interests in the Pre-Petition Collateral (defined herein) resulting from the Debtor's use, sale or lease of Cash Collateral during the chapter 11 case.

26. First, the Debtor proposes to provide adequate protection to the Secured Lenders through the granting of post-petition liens (the "Replacement Liens") on post-petition collateral (the "Post-Petition Collateral") in exchange for use of the Cash Collateral, to the extent they held liens against such types of collateral as of the Petition Date (the "Pre-Petition Collateral"). The Replacement Liens shall maintain the same priority, validity and enforceability as the Secured Lenders' respective pre-petition liens. The Replacement Liens shall be recognized only to the

8

extent of the diminution in value of the Secured Lenders' Pre-Petition Collateral after the Petition Date resulting from the Debtor's use of the Cash Collateral. In all events, the Replacement Liens shall be to subordinate to the payment of U.S. Trustee fees in the Debtor's case. Moreover, the Replacement Liens shall not extend to the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

27. As additional adequate protection for the use of Cash Collateral, the Debtor proposes to pay monthly payments to Chase under the Chase LOC in the amount of $9,222.00. In addition, the Debtor further proposes to pay Josephs the monthly payment to which he is entitled under the Josephs Note in the amount of approximately $1,300.00 per month.

28. The Debtor submits that the value of Chase and Josephs' secured positions will be adequately protected during the Debtor's use of Cash Collateral by the preservation of the value of the Debtor's assets and the issuance of the Replacement Liens as set forth above, as well as payment of monthly interest to Chase and Josephs. *Accord In re Kain,* 86 B.R. 506, 513 (Bankr. W.D. Mich. 1998).

    **C.**    **Interim Approval of Use of Cash Collateral Should be Granted**

29. Bankruptcy Rule 4001 provides, among other things, that a final hearing on the Debtor's request to use Cash Collateral may not be commenced earlier than fourteen (14) days after the service of the Motion. However, the Court may conduct a preliminary expedited hearing on the Motion upon request by the Debtor and authorize the use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

30. As set forth above, the Debtor requires the immediate use of Cash Collateral to pay present operating expenses including for funding the payroll costs for design, marketing and

9

related personnel as well as for samples, insurances, rent and other costs necessary to ensure the Debtor's continued viability. Thus, the use of Cash Collateral is necessary to avoid immediate and irreparable damage to the Debtor's estate and the Debtor submits that interim relief pursuant to Bankruptcy Rule 4001 is appropriate.

31. The Debtor requests that the Court schedule and conduct a preliminary hearing on the Motion on an expedited basis as set forth in the *Application for Expedited Consideration of First Day Matters* filed contemporaneously herewith and authorize the Debtor to utilize Cash Collateral in the amounts set forth in the Budget during the period after the entry of the interim order until the final hearing on the Motion.

32. No prior request for the relief requested in this Motion has been made by the Debtor in this Court or any other Court.

## **NOTICE**

33. Notice of this Motion has been provided by facsimile, electronic mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee, (ii) the Debtor's 20 largest unsecured creditors, (iii) Chase, (iv) Josephs, and (v) all parties who have filed a notice of appearance and request for notices in this proceeding. The Debtor submits that such notice is good and sufficient notice of the relief requested herein under the circumstances.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an interim order, substantially in the form submitted herewith: (i) authorizing the use of the Cash Collateral on the terms set forth in this Motion and in accordance with the Budget annexed hereto as Exhibit "A" in order to avoid immediate and irreparable harm to the Debtor's estate, (ii) granting the Secured

Lenders the adequate protection on the terms set forth in this Motion, (iii) scheduling a final hearing on the Motion, and (iv) granting such other relief as is just and proper.

Dated: Hackensack, New Jersey
      November 1, 2016                      CULLEN AND DYKMAN LLP

BY:   /s/David Edelberg, Esq.
       David Edelberg, Esq.
       100 Quentin Roosevelt Boulevard
       Garden City, New York 11530
       (516) 357-3700

Proposed Attorneys for Macbeth Designs LLC

11